# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Patricia S. Reed, Acting Commissioner of the West Virginia Division of Motor Vehicles, Petitioner**

**vs) No. 15-0865** (Tucker County 14-P-14)

**Tammy L. Robbins, Respondent**

**FILED**

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles ("the Commissioner") appeals the order of the Circuit Court of Tucker County, entered on August 3, 2015, reversing the June 18, 2014, decision of the Chief Hearing Examiner of the Office of Administrative Hearings ("OAH"). The OAH's decision affirmed the Commissioner's August 16, 2012, order revoking the driver's license of Respondent Tammy L. Robbins for driving under the influence of alcohol ("DUI"). The circuit court's order reversing the OAH's decision reinstated Ms. Robbins's driver's license. The Commissioner, by counsel Elaine L. Skorich, filed a brief with this Court, challenging the circuit court's decision. Ms. Robbins, by counsel Christopher W. Cooper, filed a summary response.

This Court has considered the record on appeal, the parties' briefs, and their oral arguments. Upon our review, we believe that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision reversing the circuit court's order. For the reasons expressed below, the May 1, 2014, order is reversed and this matter is remanded for further proceedings consistent with this decision.

Ms. Robbins was arrested on August 2, 2012, for DUI in the early morning hours of May 20, 2012. By letter dated August 16, 2012, the Commissioner notified her that her driver's license would be revoked on September 20, 2012, for DUI while her blood alcohol content ("BAC") was 0.15 or higher. Ms. Robbins challenged the revocation of her license in a hearing held before the Office of Administrative Hearings ("OAH") on October 4, 2013.

1

Three people testified at the hearing: Trooper Ronald Jones and Trooper Jake Kopec of the West Virginia State Police,[1] and Angie Shockley, a friend of Ms. Robbins. Trp. Jones testified that on the morning of May 20, 2012, he was present at Davis Memorial Hospital in Elkins, West Virginia, when he observed Ms. Robbins enter the hospital. He described her as smelling of alcohol, having abrasions on her forehead, and having mud on her legs. He testified that Ms. Robbins informed him she had been involved in a "car wreck" and that "she swerved to miss a deer and hit a culvert or something and that she had been drinking before that at some kind of party." He obtained a written statement from Ms. Robbins at 4:00 a.m. When Trp. Jones asked Ms. Robbins, "How much [alcohol] did you have tonight?" the written statement reflects that she responded, "two glasses of wine one in the car."

Although he did not request a blood test for the purpose of determining Ms. Robbins's BAC, Trp. Jones did request that the hospital use a nonalcoholic swab for any blood draw from Ms. Robbins. The hospital did ultimately draw blood from Ms. Robbins at 5:41 a.m., and per Trp. Jones's request, a nonalcoholic swab was used. Trp. Jones's final involvement in the investigation was to contact Trp. Kopec in Elkins. Trp. Kopec took over the investigation.

Trp. Kopec testified that his first investigative action was to examine the scene of Ms. Robbins's car accident. He stated that upon arriving in the area where the accident occurred, "[i]t appeared that [the car] had been dragged out of the ditch and taken away." By calling wrecker services in the area, he discovered that the vehicle had been taken to Ketterman's Tow Service.[2] According to Trp. Kopec, police had not granted permission for the vehicle to be towed. He traveled to Ketterman's Tow Service, and examined Ms. Robbins's vehicle, noting that the vehicle was "just totally destroyed" and that there "appeared to be a head imprint into the windshield of the vehicle."

Trp. Kopec attested that he then traveled to Davis Memorial Hospital to speak with Ms. Robbins. Upon his arrival at approximately 7:40 a.m., Ms. Robbins woke from sleeping. He observed that

> [s]he seemed to be in a disheveled state. You could tell that she had been involved in some type of incident which brought her to that hospital.

---

[1] At the time of the hearing before the OAH, Jake Kopec was no longer employed by the West Virginia State Police.

[2] Trp. Kopec testified that the vehicle had been towed at the request of Ms. Robbins's father. However, during oral argument, counsel for Ms. Robbins averred that the vehicle was towed from the accident scene to the home of Angie Shockley, then to the wrecker service, and that Ms. Robbins's father was not involved in the towing of the vehicle.

> There was some type of scarring and redness on her forehead and at that time, I could smell the odor of an alcoholic beverage emitting from her person.

He also noted that "she did have slurred speech, however that could have been from being tired," and that she was initially cooperative but that she became "argumentative."

Trp. Kopec informed Ms. Robbins that he had seen her vehicle and the accident scene and that he believed she had been DUI. He began filling out the DUI Information Sheet on which he noted that the accident occurred at 3:15 a.m., that she had the odor of alcoholic beverage on her breath, that her speech was slurred, that her attitude was argumentative, that her clothing was muddy and stained, and that her eyes were bloodshot and glassy. Using the blood test results provided to him by the hospital, Trp. Kopec calculated that Ms. Robbins's BAC, at the time of the blood draw, was 0.162, and he entered this value onto the DUI Information Sheet. At her request, Trp. Kopec permitted Ms. Robbins to complete a portion of the DUI Information Sheet herself. She wrote that she had had half of a glass of wine since the crash. Ms. Robbins refused to sign the DUI Information Sheet.

Trp. Kopec testified, "It is my belief and my opinion that Ms. Robbins was under the influence of alcohol prior to the collision of said vehicle on a state-maintained road, and that she did not consume alcohol afterwards." He based this belief on the initial statement taken by Trp. Jones and the BAC he calculated using the blood draw results.

Angie Shockely was the final witness to speak during the hearing before the OAH. She said that after Ms. Robbins's car accident, a mutual friend transported Ms. Robbins to Ms. Shockley's house. When asked whether Ms. Robbins told her about the accident, Ms. Shockley testified, "She really didn't say anything to me. She was in a good bit of pain and crying, not really talking much at all." Ms. Shockley said that in the time it took her to retrieve a pair of sweat pants from another room for Ms. Robbins, a task she estimated took about a minute and a half, Ms. Robbins drank "[a]pproximately a third of a bottle [of Grey Goose vodka]. The bottle was half or a little more empty, and it was on my kitchen counter and she drank a good bit of it before I took it from her." Ms. Shockley described the bottle as being "about the size of a wine bottle," and said that Ms. Robbins drank "[s]everal ounces." Shortly thereafter, Ms. Shockley drove Ms. Robbins to the hospital, estimating that from the time Ms. Robbins arrived at her home to the time they arrived at the hospital, about an hour had passed.

The decision of the Hearing Examiner and the final order of the Chief Hearing Examiner were entered on June 18, 2014. The Hearing Examiner made findings that "[Ms. Robbins] stated that she drank two glasses of wine before the accident but there was no time line established for that alcohol intake"; that Ms. Robbins had injured her head in the accident; that Ms. Robbins drank "one third of a bottle" of vodka before

3

going to the hospital; that at least an hour passed between the accident and Ms. Robbins's arrival at the hospital; and that the blood draw "took place at least two hours and forty-one minutes after the accident." Based on these findings, the Hearing Examiner concluded:

> It could be inferred that [Ms. Robbins] was under the influence of alcohol when she had the accident by the evidence is just as susceptible to a finding that she was not impaired when she had the accident and she became impaired as a result of drinking a third of a bottle of vodka on top of a hard knock on the head. . . . [T]he lack of any direct evidence or a stronger circumstantial case establishing [Ms. Robbins]'s being impaired *while driving* leads to the conclusion that the Commissioner's Order should be reversed.
>
> The evidence does not satisfy the [Commissioner]'s burden of proof, by a preponderance of the evidence standard, that [Ms. Robbins] was driving in the State of West Virginia while impaired by alcohol.

The Chief Hearing Examiner disagreed with the Hearing Examiner's conclusion, determining that "the Hearing Examiner has given too little weight to several key facts which provide significant inferences favorable to the [Commissioner]'s evidence that support sustaining DMV's Revocation Order." The Chief Hearing Examiner placed greater weight on two things: Ms. Robbins's admission that she drank before the accident and Ms. Robbins's failure to report the accident to police.

With regard to the admission of drinking, the Chief Hearing Examiner decided:

> After admitting she drank "two (2) glasses of wine, one (1) in the car" to the Investigating Officer, she changed this account. This modification occurred after she made a request to fill out the Interview portion of the DUI Information Sheet - rather than having the Investigating Officer continue to record her responses. When the Investigating Officer accommodated her request, she changed her previous account of "two (2) glasses of wine, one (1) in the car" to one half (1/2) of a glass. This provides a reasonable inference of a lack of candor on [Ms. Robbins]'s behalf - bearing on her credibility. [Ms. Robbins] chose not to testify and, consequently, this discrepancy was not addressed.

On the issue of the accident, the Chief Hearing Examiner reasoned:

> The fact [Ms. Robbins] may have consumed vodka at her ex-roommate's residence after the accident, does not, in the Chief Hearing Examiner's opinion, provide sufficient and credible evidence to rebut the [Commissioner]'s evidence - when considering [Ms. Robbins] admitted to

4

drinking prior to the accident, consuming at least one glass of wine while in the automobile – while she thereafter totaled the vehicle and, by all appearances, tried to conceal the accident – in violation of the law.

Ms. Robbins appealed the decision of the OAH to the Circuit Court of Tucker County. The circuit court decided, by order entered August 3, 2015, that "the original Hearing Examiner for DMV [sic] got it right. There was not enough evidence to meet the preponderance of evidence standard in the case. . . . [T]he Chief Hearing Examiner's decision was clearly wrong based upon the evidence and was an abuse of discretion." The circuit court reversed the OAH's order. In so doing, the court noted:

> The [c]ourt recognizes that the Chief Hearing Examiner has the authority to make the final call for DMV. However, for years, DMV's attorneys have been stressing that the Hearing Examiner was there and heard the testimony and great deference should be afforded his determinations. In this instance, DMV is asking the [c]ourt to virtually ignore the determination of its own Hearing Examiner.[3]

(footnote added).

The Commissioner now appeals the circuit court's decision, arguing that the circuit court erred by ignoring (1) the authority of the Chief Hearing Examiner to overrule the decision of the Hearing Examiner and (2) the clear evidence that Ms. Robbins was DUI.

This Court applies the following standard of review in appeals dealing with driver's license revocation proceedings:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Additionally, "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of

---

[3] In its order, the circuit court erroneously designates the Hearing Examiner and Chief Hearing Examiner as part of the Division of Motor Vehicles. The Hearing Examiner and Chief Hearing Examiner are both part of a separate administrative agency: the OAH.

5

an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *id.*

With regard to the Commissioner's allegation that the circuit court ignored the Chief Hearing Examiner's authority to overrule the Hearing Examiner, we agree that the circuit court has erred by placing greater weight on the Hearing Examiner's decision than on the Chief Hearing Examiner's decision. Pursuant to the West Virginia Code of State Rules, "[i]n case of conflict between the final decision of the hearing examiner and the final order of the Chief Hearing Examiner, the final order of the Chief Hearing Examiner shall control." W. Va. Code R. § 105-1-17.3 (2013) (in part). The circuit court's review is limited to determining whether the Chief Hearing Examiner's decision is supported by the facts and the law, not by pitting the Chief Hearing Examiner's decision against that of the Hearing Examiner.

In this case, the circuit court's reliance on the Hearing Examiner's decision, under these facts, constitutes an abuse of discretion. As determined by the Chief Hearing Examiner, the Hearing Examiner did not afford proper weight to evidence of Ms. Robbins's credibility. While we do not find that the record supports the Chief Hearing Examiner's conclusion that Ms. Robbins lied to the police about how much wine she consumed, we do find that Ms. Robbins was not forthright with Trp. Jones about any purported vodka consumption, and she made a misleading statement on the DUI Information Sheet. When Trp. Jones asked Ms. Robbins "How much [alcohol] did you have tonight?", Ms. Robbins did not reveal any alleged consumption of vodka at Ms. Shockley's home. Likewise, on the DUI Information Sheet, Ms. Robbins did not acknowledge drinking vodka after the accident, noting only that she drank half a glass of wine since the crash. Furthermore, we agree with the Chief Hearing Examiner's assessment that the removal of Ms. Robbins's vehicle from the crash site reflects an attempt to conceal the accident from law enforcement.

The evidence showing Ms. Robbins's lack of candor with police and her attempt to conceal the accident from police, along with the uncontested evidence that she had been drinking prior to her accident—including her admission to consuming alcohol in her vehicle—compels the conclusion that Ms. Robbins was DUI. Thus, the circuit court abused its discretion by reversing the decision of the OAH. We therefore reverse the circuit court's August 3, 2015, order and remand for further proceedings consistent with this decision.

Reversed and remanded.

**ISSUED: November 15, 2016**

6

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II